UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20296-BECERRA

UNITED STATES OF AMERICA

v.

OSCAR JESUS MEDINA RODRIGUEZ,

    Defendant.
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S PSI OBJECTIONS

The United States hereby responds to the Defendant Oscar Jesus Medina Rodriguez's PSI Objections (DE 62). The Defendant pled guilty to one count of conspiring to purchase 90 AK-47 style rifles by means of a false statement. He does not object to any of the facts set forth in the PSI but objects to the application of the following two enhancements:

1. 5-level enhancement for transporting or disposing of—or conspiring to transport or dispose of—two or more firearms to people whom the defendant had reason to believe intended to use or dispose of the firearms unlawfully (Section 2K2.1(b)(5)(C)(III)).

2. 4-level enhancement for possessing firearms with reason to believe they would be transported out of the United States (2K2.1(b)(6)(A).

The PSI correctly applied both of these enhancements and the United States respectfully requests that the Court overrule the Defendant's objections.

## BACKGROUND

In early to mid-June 2024, the Defendant and two co-conspirators—Henyelbert Dario Ferrer Navarro ("Ferrer Navarro) and Kevin Elian Larrahondo Garcia ("Larrahondo Garcia")—conspired to purchase firearms by means of a false statement. *See* PSI ¶¶ 1–12. On at least four separate occasions during that time, they traveled to a federal firearms licensee ("FFL") in Miami, Florida and illegally purchased a total of 90 AK-47 style rifles. PSI ¶¶ 5–12. On each of the four

occasions, Larrahondo Garcia filled out an ATF Form 4473 stating that he was the ultimate purchaser/transferee of the firearms, yet he gave nearly all of the firearms to the Defendant and Ferrer Navarro right after buying them. *Id.* On three of the four occasions, the Defendant and Ferrer Navarro were present at the FFL when Larrahondo Garcia filled out the Forms 4473 and completed the purchases, and the Defendant and Ferrer Navarro took possession of the guns in the FFL parking lot. *Id.* And on at least one of those occasions, the Defendant handed Larrahondo Garcia a significant amount of cash in the parking lot of the FFL, which Larrahondo Garcia used to purchase 13 AK-47 style rifles. *Id.* ¶ 6.

All three individuals were arrested at the FFL on June 18, 2024 as they were trying to purchase 27 AK-47 style rifles. *Id.* ¶ 11. The Defendant agreed to sit for an audio and video recorded post-*Miranda* interview with law enforcement. *Id.* ¶ 13. In the interview, he denied ever receiving firearms from the FFL, despite clear surveillance video footage from both the FFL and from another location showing the Defendant and Ferrer Navarro take possession of firearms Larrahondo Garcia had just purchased, and despite contradictory statements from both co-conspirators. *Id.* The Defendant also stated that Ferrer Navarro was present at the FFL "to just hang out." *Id.*

Although the Defendant denied knowing where the firearms were going, Larrahondo Garcia stated that the Defendant and Ferrer Navarro had both told him that the firearms were destined for Colombia and the guerilla forces there. PSI ¶¶ 15.

## ARGUMENT

**A. The Five-Level Enhancement Under Section 2K2.1(b)(5)(C)(III) Applies Because the Defendant Transported and Disposed of Firearms to People with Reason to Believe They Would Use or Dispose of the Firearms unlawfully**.

The 5-level enhancement under Section 2K2.1(b)(5(C)(III) applies because the Defendant

had reason to believe that the AK-47 style rifles he transported and delivered to people who would use power tools to obliterate their serial numbers were going to use or dispose of those guns illegally. That section provides applies where a defendant "transported, transferred, sold, or otherwise disposed of . . . two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who . . . (III) intended to use or dispose of the firearms unlawfully." Courts have looked to the following types of circumstantial evidence to find that a defendant would have had reason to believe that the person receiving the firearms would use them illegally: (1) the number of guns transferred; (2) the brief timeframe in which the guns were sold; and (3) the general circumstances under which the guns were sold, including the fact that the guns were purchased in cash inside a vehicle. enhancement applies look to in determining whether a Defendant had reason to believe the firearms. *See United States v. Jennings*, No. 22-1695-CR, 2024 WL 461713, at *3 (2d Cir. Feb. 7, 2024).

Here, Larrahondo Garcia told law enforcement that the Defendant and Ferrer Navarro introduced him to a "bodega" in Doral, Florida on June 1, 2024, where an operation consisting of at least 50 people were receiving AK-47s and using power tools to obliterate serial numbers from the firearms. PSI ¶ 15. This fact standing alone would give anyone reason to believe that these people were going to use or dispose of the guns unlawfully. But in addition to the fact that the people receiving at least some of the firearms were part of an operation that would store and de-serialize AK-47s, many of the same facts that the court considered in *Jennings* are present here. First, the court in *Jennings* found that the defendant would have had reason to believe the firearms would be used unlawfully because the defendant had sold sixteen handguns, seven of which were the same make and model. 2024 WL 461713, at *3. The court noted that the large number of similar guns would give a person reason to believe the guns would be used unlawfully. *Id.* Here,

3

the Defendant helped transport not sixteen handguns, but ***ninety AK-47 style rifles***.  PSI ¶¶ 5–12.  Again, this fact standing alone would give anyone reason to believe these the people receiving the enormous number AK-47s would use them unlawfully.  Second, the court in *Jennings* pointed out the "brief timeframe in which the guns were sold," noting that three of the transactions took place in less than month.  2024 WL 461713, at *3.  Here too, the Defendant and his co-conspirators purchased not sixteen firearms over the course of a month, but 90 AK-47s over the course of only two and half weeks.  *See* PSI ¶¶ 5–12.  And while it is not clear exactly what the Defendant did with the firearms after each transaction, it is clear that he and the other co-conspirators transferred the firearms they had purchased on June 1, to the individuals in the bodega that very same day.  PSI ¶ 15.  Finally, the court in *Jennings* looked to the "general circumstances" surrounding the Defendant's disposition of the firearms.  Here, as noted above, the Defendant disposed of the firearms to individuals in a bodega who would use power tools to remove their serial numbers.  Under these circumstances, the Defendant undeniably had reason to believe the firearms would be used or disposed of unlawfully.  For these reasons, the PSI correctly applied the 5-level enhancement under 2K2.1(b)(5)(C)(III) and the Court should overrule the Defendant's objection.

   B. **The Four-Level Enhancement Under Section 2K2.1(b)(6)(A) Applies Because the Defendant Knew the Firearms Would be Transported to Colombia.**

The Section 2k2.1(b)(6)(A) enhancement applies because the Defendant knew the firearms would be transported to Colombia.  That Section provides for 4-level enhancement where the defendant "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States."  Here, Larrahondo Garcia told law enforcement in a recorded post-*Miranda* interview that both the Defendant and Ferrer Navarro had told him that the firearms they were purchasing would be transported to Colombia to be supplied to guerilla forces there.  PSI ¶ 15.  While this statement alone would be sufficient to establish by

4

a preponderance that the Defendant knew the firearms were being shipped to guerilla forces in Colombia, there is substantial evidence to corroborate this information. First, the fact that the co-conspirators purchased an enormous number of AK-47 style rifles over the course of less than three weeks is consistent with furnishing guerilla forces. Second, Larrahondo Garcia told law enforcement in detail about the bodega in Doral that the Defendant and Ferrer Navarro had introduced him to in which at least 50 people of Colombian or Venezuelan descent were working there to store and de-serialize AK-47s. Again, this corroborates Larrahondo Garcia's statement that the Defendant knew the firearms were destined for guerilla forces in Colombia. Thus, the PSI correctly found that the 4-level enhancement under 2K2.1(b)(6)(A) applies, and this Court should overrule the Defendant's objection.

        Respectfully submitted,

        HAYDEN P. O'BYRNE
        UNITED STATES ATTORNEY

        /s/ *Timothy J. Farina*
        TIMOTHY J. FARINA
        Assistant United States Attorney
        Court ID. No: A5503150
        99 NE 4th Street
        Miami, Florida 33132
        Tel: (305) 961-9196
        Timothy.Farina@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF

 /s/ Timothy Farina
Timothy Farina
Assistant United States Attorney